221, 228 (D.N.J. 2005) (allowing plaintiffs to add new statements to the amended complaint, after defendants filed for summary judgment, "would surely prejudice Defendants"); Fry v. UAL Corp., 895 F. Supp. 1018, 1050 (N.D. Ill. 1995) (finding plaintiffs "unduly delayed in seeking to amend their amended complaint to properly allege a duty to update claim"). The Court, then, must address plaintiffs' amended complaint as pleaded.

### C. Securities Fraud

The Securities Exchange Act of 1934 affords a private cause of action to victims of securities fraud. See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005). The basic elements of a securities fraud claim include: a material misrepresentation (or omission); scienter; a connection with the purchase or sale of security; reliance; economic loss; and loss causation, a causal connection between the material misrepresentation and the loss. Id. Here, the Court finds plaintiffs have failed to establish that defendants issued material misstatements, and have likewise failed to demonstrate that defendants acted with the requisite scienter.

#### 1. Material Misrepresentations

The claimed misstatements logically fall into three categories: statements summarizing fourth quarter 2005 ICD sales; earnings guidances for first quarter 2006; and statements made January 25, 2006, February 10, 2006, and March 7, 2006 concerning the ICD market.

11

### a. Materiality

Material statements are those which significantly impact a reasonable investor's mix of information. See Basic v. Levinson, 485 U.S. 224, 231-32 (1988). While materiality is usually a jury question, "[w]here a reasonable investor could not have been swayed by an alleged misrepresentation" courts may find an alleged misrepresentation immaterial. Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546 (8th Cir. 1997). For example, "soft, puffing statements generally lack materiality because the market price of a share is not inflated by vague statements predicting growth." Id. at 547. Forward-looking statements, accompanied by "meaningful cautionary" language, are also considered immaterial, and are protected under the PSLRA's safe harbor. 15 U.S.C. § 78u-5(c).

Applying these principles, the Court holds, as a matter of law, that the statements made on January 25, 2006, February 10, 2006, and March 6, 2006, constituted mere "puffing." A statement saying St. Jude was "well positioned" to continue gathering market share, and expected "to continue gaining market share going forward" would not influence investor behavior. See In re: Hutchinson Tech., Inc., 536 F.3d 952, 956 (8th Cir. 2008) (agreeing with district court that company's statement it was "well-positioned on a number of new" programs constituted mere puffing). Similarly, statements saying the company's ICD program was "competitive," heading into 2006 "with nothing holding back [its] program," or continued to "expect to see strong growth," are not

material to investment decisions. Generalized statements concerning future success of a company's products and sales programs are commonplace. Nothing in these statements, however, would alter a reasonable investor's behavior.

Beyond this, St. Jude's 2006 revenue projections fall under the PSLRA's "safe harbor" for forward-looking statements accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c)(1)(A)(i). Forward-looking statements include "projection[s] of revenues" and statements "of future economic performance." 15 U.S.C. § 78u-5(i). In <u>In re: AMDOCS Ltd. Securities Litigation</u>, the Eighth Circuit found a company's warning that "carriers are being very careful about committing to new expenditures" constituted an acceptable cautionary statement for investors. 390 F.3d 542, 548 (8th Cir. 2004). Here, on February 10, 2006, St. Jude's CEO said the "short-term impact from disruptive market dynamics" in the ICD market could "bring the growth rate down." (Riebel Aff. Ex. 46, 6.) On November 8, 2005, the company disclosed the risk of "pressures or preferences for alternative therapies." (Langdon Decl. Ex. 13, 35.) And, on March 16, 2006, the company's 10-K release warned that "[c]ompetitive pressures will increase in the future." (Langdon Decl. Ex. 11, 8.) The company's November 8, 2005, projection identified risk factors which might affect its predictions, including reductions in the

13

number of procedures using its devices caused by cost-saving pressures or alternate therapies and safety or performance concerns about its products. (Langdon Decl. Ex. 13, 35.)

Plaintiffs respond, claiming defendants' projections fall beyond the safe harbor's ambit. They do so claiming, not that the predictions were wrong, but rather, that the company possessed contrary information it was obligated to disclose. They further maintain any "cautionary language" was not meaningful or specific enough to afford safe-harbor protection. Plaintiffs are wrong.

Defendants' "cautionary language," touching cost-conscious reductions in ICD procedures, alternative therapies, and fears or reticence about ICDs themselves, accurately predicted real-world events which decreased ICD sales. These were the same factors "discovered" by St. Jude's internal investigation when market growth slowed and other companies regained market share. The forward-looking warnings predicted events and risks which actually materialized.

      b. <u>Misrepresentation</u>

Plaintiffs' amended complaint alleges St. Jude's 2005 fourth quarter earnings report and 2006 first quarter guidance constituted false and misleading statements. According to plaintiffs, St. Jude failed to reveal its channel stuffing in those reports. (Am. Compl. ¶¶ 55, 60, 64, 66). As noted above, however, plaintiffs have walked away from this theory, and their response to defendants'

motion for summary judgment is silent on these points. Where plaintiffs offer no evidence to support this theory, their claim cannot stand.

Discovery revealed no channel stuffing during 2005's fourth quarter. The evidence demonstrated that any bulk purchase discounts and credit terms remained within normal ranges. (Hendrick Aff. ¶ 4.) St. Jude did not buy back any unsold ICDs. (Id. ¶ 5.) Even after an audit, the company has not restated 2005's fourth quarter sales results. (Zurbay Aff. ¶ 2.) The plaintiffs apparently concede these points. As the channel stuffing "fraud" claim has no support, defendants were not obligated to report it for the fourth quarter 2005.

Plaintiffs still claim St. Jude's 2006 first quarter guidance is actionable because it was "made without a reasonable basis." See In re: NationsMart Corp. Sec. Litig., 130 F.3d 309, 320 (8th Cir. 1997). Defendants counter, arguing their estimates were based on a "good faith assumption" that the 2006 ICD market would continue to expand at 15 to 20 percent. (Defs.' Mem. Supp. Summ. J. 22.) They claim a company's error in predicting sales, absent more, does not establish fraud. The Court agrees.

Plaintiffs offer no evidence showing St. Jude knew or recklessly disregarded contrary information when making its first quarter 2006 sales guidance statements. Plaintiffs zealously argue defendants' forecasting process was "inherently unreliable," but

15

such an assertion does not amount to fraud.[2]  Defendants sell medical devices, they are not economic forecasters.  While one can argue a company can improve earnings forecasts by including more data, hiring more analysts, or outsourcing the number crunching, the law does not require they do so.  See Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 472 (1977) ("[A] cause of action under Rule 10b-5 does not lie for mere negligence.").  St. Jude's forecast model had previously yielded accurate results, and the company had used a substantially similar bulk sales methodology since 2003.  (Hendrick Aff. ¶ 3.)  Here, where plaintiffs have abandoned their allegations of channel stuffing, they have failed to demonstrate defendants intentionally, or even recklessly, mislead the market in its forecast.

2. Scienter

A plaintiff who would avoid summary judgment must show defendants acted with the requisite scienter, and acted intentionally or with a reckless disregard for the truth of a material statement.  Kushner v. Beverly Enters., Inc., 317 F.3d 820, 827-31 (8th Cir. 2003). Recklessness can be demonstrated by showing "highly unreasonable omissions or misrepresentations" involving "an extreme departure from the standards of ordinary care . . . presenting a danger of misleading buyers or sellers which is

---

[2] The Court cannot help but recall the adage which posits "predictions are always difficult, especially about the future."

16

either known to the defendant or is so obvious that the defendant must have been aware of it." In re: K-Tel Int'l, Inc., Sec. Litig., 300 F.3d 881, 893-94 (8th Cir. 2002) (quotations omitted).

In the case of a forward-looking misstatement, a plaintiff must prove the forward-looking statement was "made with actual knowledge by that person that the statement was false or misleading." 15 U.S.C. § 78u-5(c)(B)(i). Evidence of motive and opportunity are relevant when establishing scienter. In re: K-Tel Int'l, Inc., Sec. Litig., 300 F.3d at 893-94. Here, the Court holds plaintiffs have failed to raise a genuine and triable issue of material fact as to defendants' intentional, knowing, or reckless behavior.

Citing positive remarks issued by St. Jude representatives on January 25, 2006, February 10, 2006, and March 7, 2006, plaintiffs contend these statements were misleading where defendants knew, but failed to disclose or recklessly disregarded, the company would not meet sales goals where it "engaged in the practice of stuffing its retail" channels with inventory. (Am. Compl. ¶ 64.) Again, however, plaintiffs' memorandum fails to proffer any evidence that defendants knew they engaged in channel stuffing.

Plaintiffs are reduced to asserting that key St. Jude employees "knew facts or had access to information" indicating ICD sales were lagging, yet they did not update the market. See Fla. State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 665 (8th Cir.

17

2001). Plaintiffs argue such statements demonstrate scienter. (Pls.' Mem. Opp. Summ. J. 42.) Plaintiffs' argument, however, is fatally flawed: they are now arguing defendants possess scienter for a fraud which they have not pled. This brings the Court back to the fact that plaintiffs pled a channel stuffing theory of fraud, sustained that theory in the face of a PSLRA and Rule 12 challenge, and have now abandoned that theory in favor of another which, to date, has not been fully articulated, let alone pled.

### 3. Individual Liability

Finally, where the Court finds no liability against St. Jude, the Court dismisses the amended complaint against the individual defendants. See Parnes, 122 F.3d at 550 n.10 ("Because the Plaintiffs presented no actionable claim for violation of [Section 10(b), or Rule 10b-5] the claims for controlling person liability were also properly dismissed.").

## III. Conclusion

Plaintiffs placed before this Court an amended complaint accusing defendants of illegally stuffing market channels with its ICD product, thus cannibalizing future sales. Having rung that bell, plaintiffs ask the Court to turn tone deaf. Plaintiffs now accuse defendants of failing to provide timely market updates. This Court will not allow plaintiffs to first, abandon their PSLRA and Rule 12-tested theory of the case; and, at this late date, substitute an untested theory of their choosing. To do so would defeat Congress's expressed intention in enacting the PSLRA and

prejudice defendants.

Accordingly, IT IS ORDERED that Defendants' motion for summary judgment is granted [Docket No. 180].

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  June 22, 2009

                                    s/ James M. Rosenbaum
                                    JAMES M. ROSENBAUM
                                    United States District Judge